Ernest ALLEN, Plaintiff,

v.

OHIO DEPARTMENT OF REHA-
BILITATION AND CORREC-
TION, et al., Defendants.

No. 99CV797.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 19, 2001.

Retanio Rucker, The Smith & Rucker Co., L.P.A., Columbus, OH, for Plaintiff.

Robert Lee Griffin, Ohio Attorney General—2 Employment Law Section, Columbus, OH, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on the Motion for Summary Judgment of Defendants Ohio Department of Rehabilitation and Corrections ("ODRC"), Reginald A. Wilkinson, Patricia Andrews and Rukhsana Akram. Defendants filed their Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, on September 28, 2000. The case is in federal court on the basis of federal question jurisdiction.

Plaintiff Ernest Allen brought suit against ODRC, Akram in her individual capacity and Wilkinson, Andrews and Akram in their officially capacities, under the Fourteenth Amendment of the United States Constitution, Title VII, 42 U.S.C. § 2000e, 42 U.S.C. § 1981 and 42 U.S.C. § 1983. He alleges that he has been discriminated against because he is African–American. Plaintiff seeks compensatory damages, declaratory and injunctive relief, attorneys' fees, costs, punitive damages and special damages. The Defendants seek summary judgment on all claims.

Essentially, Plaintiff claims that if he were white: (1) inmate complaints about him would be investigated as to their veracity, and, where appropriate, the inmates would be sanctioned; (2) his probationary period would not have been extended for ninety days, and (3) he would not have received a one-day suspension.

For the following reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### II. FACTS

Because this matter is before the Court's attention on Defendants' Motion for Summary Judgment, the facts presented are in the light most favorable to Plaintiff.

#### A. Procedural Facts

On September 29, 1998, Plaintiff Allen filed a Charge of Discrimination—alleging race discrimination—with the Ohio Civil Rights Commission and the EEOC. On May 13, 1999, the EEOC issued Plaintiff a right-to-sue letter. On August 16, 1999, Plaintiff filed his Complaint in this Court. On September 28, 1999, Defendants filed their Answer. On September 28, 2000, Defendants filed the instant Motion for Summary Judgment.

#### B. Operative Facts

Defendant ODRC is a state agency that operates the Franklin Pre Release Center ("Franklin Center"), a minimum- and medium—security correctional facility for women located in Columbus, Ohio. Defendant Wilkinson is the current director of ODRC. Defendant Andrews is the current warden of the Franklin Center. Defendant Akram was the warden of the Frank-

lin Center at the time of each of the alleged acts of discrimination.

On June 9, 1997, Plaintiff Allen, an African–American male, was appointed as a Correction Officer with Defendant ODRC's Franklin Center. The effective date of Plaintiff's appointment was July 14, 1997. ODRC Correction Officers are required to complete successfully a one-year probationary period; Plaintiff's was originally scheduled to conclude on August 4, 1998.[1] From July 1997 until April 2000, Plaintiff worked during the second shift (2:30 p.m. to 10:30 p.m.). During that time period, Plaintiff's supervisor was Captain Robert Keuchler. Plaintiff is still employed by ODRC as a Correction Officer at the Franklin Center, and has been so employed continuously since his start-date.

As a member of the Ohio Civil Service Employees Association ("OCSEA"), Plaintiff is bound by the provisions of the applicable collective bargaining agreement between OCSEA and the State of Ohio. During his probationary period, Plaintiff's employment was governed by Article 6, "Probationary Employees," of the 1997–2000 labor contract. Section 6.01, "Probationary Periods," of the labor contract states that the probationary period of Correction Officers lasts 365 days. Section 6.01 also states that OCSEA and ODRC can mutually agree to extend the probationary period of an employee, and that ODRC has the sole discretion to discipline or discharge probationary employees.

Several times during his probationary period, Plaintiff cited Inmates Carr, Hudson, Robinson, Scott and Whitney for various violations of ODRC and Franklin Center regulations. Plaintiff also cited other inmates for infractions. Inmates Carr, Hudson, Robinson, Scott and Whitney accused Plaintiff of showing favoritism to certain inmates and exchanging phone numbers with them. Plaintiff denies these allegations. Plaintiff requested that the institution investigate these accusations and, where appropriate, discipline the inmates. ODRC and Warden Akram, while finding that there was insufficient evidence to discipline Plaintiff for inmate favoritism, did not act on Plaintiff's requests to discipline the inmates who made the allegations.

On May 4, 1998, Nicholas G. Menedis, the Franklin Center's Deputy Warden of Operations, provided an "action plan" to Plaintiff. In the action plan, Mr. Menedis indicated that inmates had made allegations about Plaintiff that created concerns, and that the purpose of the action plan was to help Plaintiff correct the perceptions that led to the inmates' complaints. The action plan was signed by Plaintiff's supervisor, Captain Keuchler.

Defendants allege that Plaintiff committed violations of the Standards of Employee Conduct ("SEC") during his probationary period. On May 24, 1998, Plaintiff retrieved a college textbook from his car, which was parked in the employee parking lot. The parties disagree about whether Plaintiff "left his post" in order to retrieve the textbook, with Plaintiff claiming that he did not because he was working "on the yard" that day and that yard officers have "free reign" of the institution. Plaintiff did not receive permission to retrieve his textbook. He also did not receive permission to bring the textbook into the facility, which Defendants claim was in violation of the Franklin Center's "Institutional Entrance" policy.

On May 30, 1998, Plaintiff was involved in a verbal altercation with Rita Morrissey, another Correction Officer. Based upon the incident, Plaintiff was charged with making abusive statements toward another employee. Plaintiff admits the incident occurred and admits that he called CO Morrissey "two-faced." Captain Keuchler's July 13, 1998 report places the

1. The tenure of a Correction Officer begins with three weeks of training, which does not count toward the completion of the one-year probationary period.

blame for the conflict squarely on Morrissey.

Defendants also allege that, on June 19, 1998, Plaintiff walked around the front entrance metal detector instead of walking through it. While Plaintiff does not deny that such an action would be a violation of the Franklin Center's "Institutional Entrance" and "Metal Detector" policies, he does deny that he ever did such a thing. In addition to his own testimony, he has adduced an affidavit from Venita S. White, wherein she states that she "was present when Correction Officer Randolph Alfred ... recanted his original statement relative to Mr. Allen going around the metal detector to clock in. Rather, CO Alfred admitted that Mr. Allen did not go around the metal detector, but went through the detector as required." Defendants also allege that, when CO Alfred called Plaintiff back to walk through the metal detector, Plaintiff became verbally abusive, calling CO Alfred an "ass" and stating: "If it was one of your buddies, you would let him clock in before clearing the metal detector."

On July 27, 1998, Major Jay Worley wrote a memorandum, which was intended to be an addendum to Plaintiff's mid-probationary evaluation, to Defendant Akram. Major Worley noted that inmates had complained about Plaintiff's favoritism toward other inmates, and that Plaintiff's ability to direct and coordinate the behavior of other individuals was questionable. On July 28, 1998, Major Worley submitted to Plaintiff two "performance action plans," which outlined areas of improvement for Plaintiff to pursue.

Sometime before July 31, 1998, Deputy Warden Menedis and Major Worley recommended that Plaintiff be "probationarily removed."[2] Defendant Akram instead proposed to the OCSEA that Plaintiff's probationary period be extended. Defendant Akram informed the OCSEA that she would terminate Plaintiff's employment with ODRC unless the union agreed to an extension of Allen's probationary status. The union agreed to Ms. Akram's proposal. On July 31, 1998, Plaintiff Allen's probationary period was extended ninety days. The extension agreement was signed, under the phrase, "All appropriate parties have signed below indicating their agreement with the extension of Officer Allen's probationary period," by: Plaintiff, OCSEA Chapter President Venita White, Defendant Akram, Administrative Deputy Deb Timmerman Cooper, Labor Relations Officer Gerald Clam, Personnel Officer 3 Geri Sutter and Major Worley. Defendants claim that the extension was a result of Plaintiff's alleged rules infractions. Apparently, only one other ODRC Correction Officer's probationary period has been extended for violations of department rules— that of Nicole Edwards, a white female. In November of 1998, Plaintiff passed his probationary period.

On July 31, 1998, ODRC conducted a pre-disciplinary hearing regarding Plaintiff's conduct on May 24, 1998 and June 19, 1998. Plaintiff was given the opportunity to respond to the allegations against him and "tell [his] side of the story" at this hearing. After the hearing, Hearing Officer Deb Timmerman Cooper concluded that there was just cause to discipline Plaintiff for violating Rule 7, "Failure to follow post orders, administrative regulations, policies, procedures or directives," and Rule 12, "Making obscene gestures or statements or false or abusive statements toward or concerning another employee, supervisor, or member of the general public." On August 28, 1998, Plaintiff Allen was sanctioned for violating SEC Rules 7 and 12. Allen's punishment was a one-day suspension from work, effective September 26, 1998. Under the controlling disciplinary grid, ODRC could have imposed a three-day suspension for a first-time viola-

---

**2.** That is, they recommended that he be terminated before the end of his probationary period.

tion of Rule 7, and could have terminated CO Allen for a first-time violation of Rule 12.

After receiving notification of the one-day suspension, OCSEA filed a grievance challenging ODRC's action. On September 15, 1999, OCSEA and ODRC entered into a grievance settlement. The settlement reduced Plaintiff's one-day suspension to a written reprimand, and granted Plaintiff one day's back wages. OCSEA and ODRC also agreed that the extended probationary period would be removed from Plaintiff's personnel file and would have no effect on Plaintiff.[3]

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The non-moving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir.1993) (citation omitted). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (finding summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In responding to a motion for summary judgment, however, the non-moving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994). Furthermore, the existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505; *see also Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

After addressing the preliminary matter of immunity, the Court will consider in turn each of Defendants' arguments relating to Plaintiff's claims for relief, which include: (1) Title VII, 42 U.S.C. § 2000e; (2) 42 U.S.C. § 1981; (3) Fourteenth Amendment deprivation of equal protection ( 42 U.S.C. § 1983), and (4) Fourteenth Amendment denial of due process.

### A. Immunity

#### 1. Eleventh Amendment

■ With few exceptions, the Eleventh Amendment of the United States Constitution prohibits individuals from suing the

---

**3.** The settlement agreement did not provide, however, for Plaintiff to receive a back-wage adjustment for the 90 day period following August 3, 1998, to account for the slight dif-

ference between the rate of pay probationary Correction Officers receive and the higher rate paid to "newly-graduated" Correction Officers.

states in federal court. *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Popovich v. Cuyahoga County Court of Common Pleas,* 227 F.3d 627, 633 (6th Cir.2000); *Mixon v. State,* 193 F.3d 389, 396–97 (6th Cir.1999). The Eleventh Amendment, however, does not bar suits against state officials seeking prospective injunctive relief to end continuing violations of federal law. *Popovich,* 227 F.3d at 633; *Wolfel v. Morris,* 972 F.2d 712, 719 (6th Cir.1992); *Bremiller v. Cleveland Psychiatric Institute,* 879 F.Supp. 782, 787 (N.D.Ohio 1995) (citing *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). ODRC is an instrumentality of the state of Ohio, protected by the Eleventh Amendment to the same extent as is the state. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir.1999); *Foulks v. Ohio Dep't of Rehabilitation & Correction,* 713 F.2d 1229, 1232–33 (6th Cir.1983).

### a. Section 1983

In the matter *sub judice,* Plaintiff has brought claims under § 1983 against ODRC and ODRC employees in their official and individual capacities. The Sixth Circuit has held that "Congress did not disturb the states' eleventh amendment immunity when it passed § 1983" and that "a state is not a 'person' subject to suit under § 1983." *Wolfel,* 972 F.2d at 718. In *Hafer v. Melo,* 502 U.S. 21, 31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the Supreme Court held that "[s]tate officials, sued in their individual capacities, are 'persons' within the meaning of [42 U.S.C.] § 1983." While, in contrast, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a

suit against the official's office. As such, it is no different from a suit against the state itself." *Wolfel,* 972 F.2d at 719. Thus, "a suit for damages against a state official in his or her official capacity cannot be maintained pursuant to § 1983." *Id.* at 718.

■ Here, ODRC and its employees sued in their official capacities are entitled to Eleventh Amendment immunity from claims for monetary damages brought under § 1983.[4] With respect to Plaintiff's § 1983 claims for monetary damages, summary judgment is therefore **GRANTED** to ODRC and to its employees sued in their official capacities.[5] With respect to Plaintiff's § 1983 claims for injunctive relief, summary judgment is **GRANTED** to ODRC, but not, on the basis of the Eleventh Amendment, to its employees sued in their official capacities. The individual capacity claim for monetary damages brought against Defendant Akram under § 1983 also survives the Eleventh Amendment.

### b. Section 1981

■ Eleventh Amendment jurisprudence with respect to § 1981 claims tracks that of § 1983 claims. The Sixth Circuit has noted specifically that " § 1981 claims against ODRC are barred by the Eleventh Amendment of the United States Constitution." *Hafford,* 183 F.3d at 512. Likewise, suits for monetary damages brought against state officials in their official capacities' are barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Suits for prospective injunctive relief brought against state officials in their official capacities, however,

---

4. Plaintiff's § 1983 claims against the officials sued in their official capacities for prospective injunctive relief are not barred by Eleventh Amendment immunity. *Popovich,* 227 F.3d at 633; *Wolfel,* 972 F.2d at 719.

5. This includes Plaintiff's due process and equal protection claims purportedly brought under the Fourteenth Amendment.

are not. *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (holding that, under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."). Finally, state employees may, in their individual capacities, be sued for monetary damages under § 1981. *Foulks*, 713 F.2d at 1233.

Therefore, with respect to Plaintiff's § 1981 claims for monetary damages, summary judgment is **GRANTED** to ODRC and to its employees sued in their official capacities. With respect to Plaintiff's § 1981 claims for injunctive relief, summary judgment is **GRANTED** to ODRC, but not, on the basis of the Eleventh Amendment, to its employees sued in their official capacities. The individual capacity claim for monetary damages brought against Defendant Akram under § 1981 also survives the Eleventh Amendment.

### c. Title VII

■ Plaintiff also seeks relief under Title VII. Citizens may "[s]ue a State in federal court when a State consents to suit or the case concerns a statute passed pursuant to Section 5 of the Fourteenth Amendment, such as Title VII claims." *Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir.1999) (citations omitted). Thus, ODRC is not entitled to Eleventh Amendment immunity from Plaintiff's Title VII claim. The individual Defendants, however, are not subject to suit under Title VII. *See infra* Part IV.B.1.

### 2. Qualified Immunity

■ Defendants next argue that Ms. Akram, in her individual capacity, is entitled to qualified immunity. Government officials sued in their individual capacities are entitled to seek qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Qualified immunity extends to individuals performing discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* A right is "clearly established" if "[a] reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Because this Court finds that none of Plaintiff Allen's statutory or constitutional rights was violated [6]—much less any of his clearly established statutory or constitutional rights—Defendant Akram is entitled to qualified immunity. The Court, therefore, **GRANTS** summary judgment to Defendant Akram in her individual capacity on all claims.

### B. Title VII Claim

### 1. Plaintiff's Title VII Claim Against Individual Defendants

The Sixth Circuit has unambiguously ruled that individual employees cannot be held liable under Title VII. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) (holding "that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."). Summary judgment is therefore **GRANTED** to the individual defendants with respect to Plaintiff's Title VII claim.

### 2. Plaintiff's Title VII Claim Against ODRC

■ Plaintiff here has not adduced any "smoking-gun," direct evidence tending to establish that ODRC discriminated against him because of his race. Without direct evidence, to establish a *prima facie* case of race discrimination under the Title VII, a plaintiff must demonstrate: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position in question; and (4) he was either replaced by a person from outside the class, or treated

---

**6.** *See infra* Part IV.B D.

differently than similarly-situated employees from outside the class. *Hein v. All America Plywood Co.,* 232 F.3d 482 (6th Cir.2000); *Warfield v. Lebanon Correctional Institution,* 181 F.3d 723, 728–29 (6th Cir.1999); *Thurman v. Yellow Freight Sys.,* 90 F.3d 1160, 1166 (6th Cir.1996); *see also Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996) (ADA claim). ODRC does not seriously contest that Plaintiff satisfies prongs one and three, but does assert that Mr. Allen neither suffered an adverse employment action nor was treated differently than similarly-situated non-minority employees.

█ With respect to the second element of the *prima facie* case, the adverse employment action must be "materially adverse" in order for the plaintiff to succeed on a Title VII claim. *See Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir.1999) (applying the "materially adverse" requirement from *Kocsis* to a Title VII retaliation claim); *Matthews v. Kilroy,* 1997 WL 377013, at *4 (6th Cir. July 3, 1997) (same). Adverse employment actions include: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Kocsis,* 97 F.3d at 886 (citation omitted). They do not include: "mere inconvenience" or "an alteration of job responsibilities." *Hollins,* 188 F.3d at 662. Although not reaching the question directly, the Sixth Circuit has noted in dicta that "[a] fifteen-day suspension probably does not qualify as an adverse employment action either." *Birone v. Indian River School,* 1998 WL 199791, at *4 (6th Cir. Apr. 15, 1998).

█ Under the fourth element, the exemplar comparable employee must be "similarly-situated *in all respects.*" *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992) (citing *Stotts v. Memphis Fire Dep't,* 858 F.2d 289 (6th Cir.1988)). In *Pierce v. Commonwealth Life Insurance Co.,* 40 F.3d 796 (6th Cir.1994), the Sixth Circuit elaborated on this standard:

In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the ... employees who[m] he alleges were treated more favorably. The similarity between the compared employees must exist in all relevant aspects of their respective employment circumstances.

*Id.* at 802 (quoting *Ruth v. Children's Med. Ctr.,* 1991 WL 151158, at *6 (6th Cir. Aug. 8, 1991)) (quotation omitted). The Sixth Circuit further advanced the evolution of the similarly-situated criterion in *Perry v. McGinnis,* 209 F.3d 597 (6th Cir. 2000), when it shifted its focus from formalism to functionality in ruling that "in applying the [similarly-situated] standard courts should not demand exact correlation, but should instead seek relevant similarity." *Id.* at 601 (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998)). Thus, for another employee to be "comparable" to a plaintiff, he must be similarly-situated in all *relevant* respects.

Once the plaintiff establishes a *prima facie* case under Title VII, the defendant must come forward with a legitimate nondiscriminatory reason for the adverse employment action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Warfield,* 181 F.3d 723 at 729; *Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121, 1126 (6th Cir.1998); *Thurman,* 90 F.3d at 1166; *Mitchell,* 964 F.2d at 582. The defendant need not show that the decision was motivated by the proffered reason, only that the non-discriminatory reason is legally sufficient to justify a judgment for the defendant. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089; *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S., 133, ——, 120 S.Ct. 2097,

2106, 147 L.Ed.2d 105 (2000) (noting that, when proceeding under the *McDonnell Douglas* framework, the defendant's burden to bring forth a legitimate, nondiscriminatory reason for its action "is one of production, not persuasion"). If the defendant proffers a sufficient nondiscriminatory reason, then the presumption created by the *prima facie* case is rebutted. *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2106; *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089. The plaintiff then must demonstrate that the employer's offered reason is but a pretext for unlawful discrimination. *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2106; *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

In *Reeves*, the Supreme Court held that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2109; *see also Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 343 (6th Cir. 1997) (noting that, "[u]nder this method, if the plaintiff establishes that the defendant's reasons are pretextual the trier of fact is permitted, but not required, to enter judgment for the plaintiff.").

■ An employee can show pretext in three different ways. First, the employee may offer evidence that the employer's asserted reason has no basis in fact. Second, the employee may argue that the reason was insufficient to discipline the employee. Third, the employee may offer evidence that the reason did not actually motivate the employer's decision. *Smith v. Chrysler Corp.*, 155 F.3d 799, 805–06 (6th Cir.1998); *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). In the first two methods, the court may infer discrimination. *Manzer*, 29 F.3d at 1084.

■ In the third route, when the plaintiff argues that the defendant's reasons

did not actually motivate the adverse employment action, the plaintiff must come forward with additional evidence of discrimination. If the plaintiff does not come forward with additional evidence, "[t]he plaintiff has failed to prove pretext and judgment for the defendant is warranted...." *Kline*, 128 F.3d at 346–47. The third type of case arises "[w]hen the plaintiff has failed to introduce evidence that the reasons offered by the defendant are 'factually false.'" *Manzer*, 29 F.3d at 1084.

In this case, Plaintiff alleges that three different incidents, taken together, amount to a materially adverse employment action: (1) the provision on May 4, 1998, by Mr. Menedis, of an "action plan" to Plaintiff; (2) the ninety-day extension of Plaintiff's probationary period, and (3) Plaintiff's one-day suspension. Defendant notes that ODRC, in accordance with its internal grievance procedures, has reduced Plaintiff's suspension to a written reprimand, paid Plaintiff one day's back wages and agreed that the extension of Plaintiff's probationary period would be removed from his personnel file and would not have an adverse effect on his career.[7]

Plaintiff's strongest argument here is that he suffered pecuniary loss from the ninety-day extension of his probationary period. As counsel for both Plaintiff and Defendants noted at oral argument, Correction Officers receive a slight pay raise when they complete their probationary periods. Plaintiff never received back pay for the period of his extension. Because he did not complete his probationary period "on time," Plaintiff argues, he suffered the functional equivalent of a demotion, complete with a "reduction" in his pay.

Defendants assert that, because the alternative was termination, the extension of Plaintiff's probationary period should be seen as a "positive act" rather than an adverse employment action. This argument is simply ridiculous: Plaintiff was

7. Thus, Defendants argue, Plaintiff is really complaining of an "adverse employment ac- tion" comprised of an action plan and a written reprimand.

supposed to "graduate" from his probationary status on August 4, 1998; instead, he was "held back" ninety days: it is inconceivable to consider this a "positive act." [8]

■ The more compelling argument is that, if a fifteen-day suspension does not clear the "materially adverse" hurdle, *see Birone*, 1998 WL 199791, at *4, then neither can Plaintiff's collection of alleged wrongs. With this line of reasoning, particularly in light of the mitigation already effectuated through ODRC's internal grievance procedures, the Court agrees.

■ With respect to prong four, that he was treated differently than similarly-situated non-minority employees, Plaintiff makes a slew of allegations of other [white and bi-racial] Correction Officers committing the same infractions for which he was disciplined: (1) walking around the metal detector; (2) leaving their posts without permission; (3) bringing non-work-related books into the Franklin Center without permission, and (4) using profane language. All, he claims, either were not disciplined or were treated less harshly than was he. Plaintiff cannot, however, satisfy the similarly-situated requirement because: (1) none of the other Correction Officers he discusses, with one exception, was a *probationary* employee; and (2) none of the other Correction Officers he discusses was charged with *all four* of the infractions for which Plaintiff was disciplined. Even under *Perry's* less exacting "relevant similarity" standard, the other officers were not charged with a distribution of offenses that could conceivably make them comparable to Plaintiff.

The one other probationary employee Plaintiff discusses is CO Joseph Eveland. CO Eveland is a white male who was hired fourteen days after Plaintiff. CO Eveland was found to have accepted food from inmates, in violation of the ODRC Rules. Like Plaintiff's, CO Eveland's probationary-period evaluations trended from very negative to quite positive during his probationary period. CO Eveland was subjected to an action plan-though CO Eveland's action plan was necessitated by his poor job performance rather than his noncompliance with Franklin Center rules—but he resigned from his position before his probationary period could be extended.[9] On these facts, the Court cannot find that CO Eveland was treated more favorably than was Plaintiff.

■ Finally, even if Plaintiff were to have made his *prima facie* case, he cannot show that Defendants' asserted reasons for disciplining him were pretext for race discrimination. Plaintiff obviously cannot offer evidence that the Defendants' asserted reasons have *no* basis in fact, as he admits to the verbal confrontation with another CO and to having brought a non-work-related book into the Franklin Center without permission. Likewise, Plaintiff cannot argue that the reasons were insufficient to discipline him, since the punishment he received was far less than the maximum allowable under the collective bargaining agreement. And, Plaintiff has offered no direct evidence that the reasons ODRC gave for extending his probationary period and suspending him did not actually motivate ODRC to do so. Under *Smith, Kline* and *Manzer*, therefore, Plaintiff has failed to carry his burden of rebutting Defendants' evidence of their legitimate, nondiscriminatory reasons for disciplining him. *Smith*, 155 F.3d at 805–06; *Kline*, 128 F.3d at 343–47; *Manzer*, 29 F.3d at 1084. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's Title VII claim.

---

8. If "termination" were the baseline against which all employment actions were compared, there could be no other adverse employment actions.

9. Defendants have also introduced evidence that white Correction Officers Nicole Edwards and Stephen Parsons were fired during their probationary periods for failing to meet the expectations of a CO.

## C. Section 1981

Section 1981 provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(a)-(b).

■■■■ Even if Defendant Akram were not entitled to qualified immunity from Plaintiff's § 1981 claim, she would still be entitled to summary judgment on it. The elements of a *prima facie* case under § 1981 are the same for those in a Title VII action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Jackson v. Quanex Corp.*, 191 F.3d 647 (6th Cir.1999). Section 1981, however, differs from Title VII in several respects. First, the plaintiff must demonstrate purposeful discrimination in a § 1981 claim. *General Building Contractor's Association, Inc. v. Pennsylvania*, 458 U.S. 375, 390, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). The burden of demonstrating purposeful discrimination is present throughout the *prima facie* case and, if applicable, in the pretextual analysis. Second, the doctrine of respondeat superior does not apply in § 1981 actions. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Kolb v. State of Ohio*, 721 F.Supp. 885, 892 (N.D.Ohio 1989). Third, in contrast to Title VII, defendants can be held individually liable for discrimination under § 1981. *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir.1986); *Taylor v. Jones*, 653 F.2d 1193, 1200 (8th Cir.1981). To establish individual liability, the individual defendant must have been personally involved in the discriminatory action. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir.1991); *Grimes v. Superior Home Health Care of Middle Tenn., Inc.*, 929 F.Supp. 1088, 1096 (M.D.Tenn.1996).

■■■■ Plaintiff's claim under § 1981 contains all the weaknesses of his Title VII claim, but does not further suffer due to § 1981's unique requirements. Because Plaintiff asserts purposeful discrimination in his Title VII action, the requirement of such does not present an additional hurdle for him to surmount in proceeding under § 1981. Also, there is no dispute that Ms. Akram was directly involved in the extension of Mr. Allen's probationary period and with his one-day suspension (as well as with the subsequent mitigation of those disciplinary actions), so § 1981's personal involvement criterion is met here. Plaintiff's § 1981 claim fails, however, for the same reasons his Title VII claim fails. That is, Plaintiff has failed to establish either that he suffered a materially adverse action or that he was treated differently than similarly-situated non-minority employees; he also cannot show that Defendants' asserted reasons for disciplining him were pretext for race discrimination.

Defendants' Motion for Summary Judgment is therefore **GRANTED** with respect to Plaintiff's § 1981 claim.

## D. Section 1983

Even if Defendant Akram were not entitled to qualified immunity from Plaintiff's § 1983 claims, she would nonetheless be entitled to summary judgment on them.

### 1. Fourteenth Amendment Equal Protection

Plaintiff's equal protection claim is subject to a method of analysis identical to that used with respect to his Title VII claim. The Sixth Circuit recently affirmed that "a plaintiff asserting a Fourteenth

Amendment equal protection claim under 42 U.S.C. § 1983 must prove the same elements required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964." *Perry,* 209 F.3d at 601 (citing *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988)). Defendants' Motion for Summary Judgment is, therefore, **GRANTED** with respect to Plaintiff's equal protection claim.

### 2. Fourteenth Amendment Due Process

Plaintiff claims that he was denied both substantive and procedural due process when the ninety-day extension of his probationary period and the one-day suspension were imposed upon him.

#### a. Ninety–Day Extension of Probationary Period

■■■ Under the terms of Plaintiff's contract, probationary employees are terminable by ODRC at will. Thus, probationary employees have no property rights in their employment and are not entitled to *Loudermill-Roth* protections.[10] ODRC is not, however, permitted to extend employees' probationary terms without consent from the union. In this case, the union, as well as Plaintiff, consented to the extension of Plaintiff's probationary period. Furthermore, through internal grievance procedures, the extension of Plaintiff's probationary period has been eradicated from his personnel record. On the basis of these facts, the Court finds that Plaintiff was not denied due process when his probationary period was extended.

#### b. One–Day Suspension

■■■ Plaintiff's claim fails here both because the d··privation he suffered was *de*

*minimis* and because he received more process before it was imposed than he could possibly have been due. In *Gillard v. Norris,* 857 F.2d 1095 (6th Cir.1988), the Sixth Circuit found that the three-day suspension of a corrections officer—who was, at the time of the suspension, "a Tennessee civil service employee who could not be dismissed or demoted on the basis of any nonmerit factor"[11]—was a *de minimis* deprivation not deserving of due process consideration. *Id.* at 1098 (quotation omitted); *see also Carter v. Western Reserve Psychiatric Habilitation Center,* 767 F.2d 270 (6th Cir.1985) (finding that two-day suspension without pay was a *de minimis* deprivation not warranting due process consideration). In the instant matter, Plaintiff was suspended for only one day, and even that one-day suspension was reduced through internal grievance procedures to a written reprimand in his file, with ODRC providing Plaintiff one day's back wages.

Furthermore, it is uncontested that Plaintiff was given prior notice of his pre-disciplinary hearing, that he was provided with ODRC's "Management Witness/Document List" prior to the hearing, that he had all relevant documents prior to the hearing, that he was represented by a union officer during the hearing, and that he had the opportunity to tell his side of the story at the hearing. In other words, even though he was not entitled to them because he had no property right in his employment and the deprivation he suffered was so minor that it did not implicate due process considerations, Plaintiff still received more-than-adequate *Loudermill-Roth* procedural protections.

---

**10.** Only an individual with a property right his continued employment has the right to the procedural protections afforded by the due process clause of the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Curby v. Archon,* 216 F.3d 549, 553 (6th Cir.2000). When a hearing is required, it does not have to be formal; rather, it need only provide the employee "oral or written notice of the

charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

**11.** In contrast to Mr. Allen, who, as a probationary employee, was subject to termination at the whim of ODRC.

Summary judgment is therefore **GRANTED** with respect to Plaintiff's due process claims.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**